UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel.
RONALD CHRISTMAS,

Petitioner,

v.

DEIRDRE BATTAGLIA,

Respondent.

No. 06 C 1897
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Ronald Christmas is serving a sentence of thirty nine years after an Illinois State Court found him guilty of committing first-degree murder. He appealed his conviction on several grounds, seeking review in the State courts. All of his State court challenges have been denied and his appeals have been exhausted. He now seeks a writ of habeas corpus.

### I. FACTS[1]

On July 6, 2000, at 10:30 p.m., Chicago police learned of a shooting at 4600 South State Street in Chicago, Illinois, and were informed that a suspect was seen fleeing. Police sergeant Speakes went to 4555 South Federal Street, about a block from where the shooting was reported to have taken place. Sergeant Speakes detained Christmas in the lobby, questioned him briefly, and then called for assistance. Two additional police officers arrived at 4555 South Federal, where they testified they saw "no trespass" signs posted in the lobby. Speakes stated he detained Christmas because he was seen running from the area of the shooting and matched the description of the shooter. Speakes stated Christmas was acting nervously. Christmas told the

---

[1] The basic facts are taken from the Illinois appellate court's recitation thereof.

officers that he did not live in the building and was not visiting anyone. Speakes placed his hand on Christmas's heart and found his heart was beating fast. The officers also stated that Christmas was breathing heavily. After the 30 second interview, they placed Christmas under arrest for criminal trespass to State supported land. The officers read Christmas his *Miranda* rights and took him to the police station.

Detective Komorowski was assigned to investigate the July 6 shooting. He testified that he learned in the early morning hours of July 7, 2000, that a person matching the description of the shooter and running from the location of the murder had been arrested for criminal trespass. Komorowski went to the station where Christmas was being held and interviewed him on three occasions, each for about 15-30 minutes, and all between July 7 and July 8, 2000. At each interview Komorowski read Christmas his *Miranda* rights. Detective Stehlik alternated shifts with Komorowski. Stehlik also interviewed Christmas on three occasions for about 10-20 minutes each time. During each interview, Stehlik advised Christmas of his *Miranda* rights. At the conclusion of the final interview on July 8, 2000, Officer O'Donnell took over the investigation. O'Donnell testified he interviewed Christmas at 6:45 p.m. on July 8, 2000. O'Donnell read Christmas his *Miranda* rights; Christmas stated that he understood these rights and the interview lasted approximately 45-50 minutes. During the interview, Christmas denied involvement in the shooting. At the conclusion of the interview, however, as O'Donnell was leaving, Christmas said "I did it. I did it." O'Donnell asked what Christmas did and Christmas confessed to shooting someone at 4600 South State. O'Donnell then showed Christmas photographs and asked if he could identify the victim, Christmas identified Shears, the victim, as the person he shot.

Assistant State's Attorney Driscoll testified that he interviewed Christmas in the early morning hours of July 9, 2000. Driscoll advised Christmas of his *Miranda* rights and Christmas stated that he understood his rights. Christmas confessed to the murder and agreed to make a videotaped statement. The videotaped confession occurred at 7:18 p.m. on July 9, 2000. On the recording, Christmas was yet again advised of his *Miranda* rights and at the end of the recording, he stated his statement was given freely and voluntarily. He also stated that he was treated fairly by the police, given food and drink, and was allowed to use the restroom and sleep.

In his statements Christmas stated he was a member of the Black Disciples street gang. On July 3, 2000 his friend and fellow gang member, Antoine Howard, was killed by a member of a rival gang, the Gangster Disciples. Christmas stated that on the night of July 6, 2000, he went to the location of the shooting armed with a gun and wearing a black hooded sweatshirt. He wanted to avenge Howard's death. Christmas stated he wanted to find a member of the Gangster Disciples. Christmas said that he spotted Shears, thought he was a Gangster Disciple, and shot him several times. He further stated that he then ran into 4555 South Federal, went to the fifth floor, wrapped the gun in the hooded sweatshirt, and threw both of these items down the incinerator shoot. As Christmas was leaving he was stopped by the police. O'Donnell investigated the statement. He was unable to locate the gun but found out that Howard was killed on July 3, 2000.

At trial, the court denied Christmas's motion to quash his arrest and suppress the evidence because the court deemed the stop justified. Komorowski and Stehlik testified that Christmas denied his involvement in the shooting and provided both of them with different alibis. Both detectives investigated the alibis Christmas provided and found that they were false.

3

Another officer found a witness to the shooting, Ronald Parker. Parker testified that on July 6, 2000, he was in the area of 4600 South State. Parker stated that he observed two men dressed in black hooded sweatshirts approach a third man and began shooting. Parker ran to avoid being shot but looked back; he then stopped a police car and told them about the shooting. He stated he saw two shooters run towards 4555 South Federal. Parker, a convicted felon, initially gave the police a false name on the night of the shooting; he was located by the police on July 9, 2000, after Christmas made his first incriminating statement. Parker identified Christmas in a line-up on July 9, 2000, at 11:45 a.m.

A jury found Christmas guilty of first degree murder on September 11, 2002.

## II. PROCEDURAL HISTORY

Christmas appealed his conviction, arguing four errors. The one alleged error at issue in this petition is the appellate court's analysis of whether the trial court erred in denying Christmas's motion to quash his arrest and suppress evidence.

The appellate court concluded that the arrest for criminal trespass to State supported land was illegal. Specifically the court stated that in order to satisfy the statute, three elements must be met: 1) the person must receive notice from the State or representative that entry is forbidden; 2) the person must remain after being given notice to depart; and 3) the person must interfere with another person's lawful use or enjoyment of the building or land. 720 ILL. COMP. STAT. 5/21-5(a) (2002). The appellate court found that the arrest was not based on probable cause because the necessary elements of the offense were not met. Specifically, the court found that the third element was not proven; there was no indication that Christmas was interfering with anyone's enjoyment of the property. Since the arrest was found to be illegal, the appellate court

4

proceeded to analyze whether the statements Christmas made while in custody and Parker's identification of Christmas were sufficiently attenuated from the illegal arrest to purge the taint of the arrest.

In a 1975 decision, the Supreme Court identified four factors used to evaluate whether the taint of an illegal arrest was sufficiently attenuated from incriminating statements such that the statements could be admitted despite the illegality of the underlying arrest. *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975). The four factors were: 1) whether the defendant was given *Miranda* rights; 2) the temporal proximity of the statements to the arrest; 3) the presence of intervening factors; and 4) the purpose and flagrancy of police conduct. *Id.*

The appellate court analyzed the *Brown* factors. The court found that factor one was satisfied because Christmas was given his *Miranda* rights at each questioning. The court found factor two to be more ambiguous because Christmas's detention lasted 44 hours. The court concluded that a lengthy detention can either purge the taint or may impel a defendant to confess. Thus, the court decided to focus on the third and fourth *Brown* factors as "the key factors" in determining the admissibility of Christmas's statements.

The court reasoned that confronting a suspect with new information may amount to an intervening circumstance that produces a desire to confess. In this case, the court found that Christmas confessed as a result of learning that the police had investigated his alibis and determined that they were false. Thus, the court held that confrontation of Christmas with the result of the investigations of his alibis constituted an intervening circumstance sufficient to establish attenuation.

The court also found that the fourth factor, purpose and flagrancy of police conduct, weighed in favor of admission. The court considered police conduct flagrant if it causes surprise, fear, confusion, or if it has a quality of purposefulness. In this case, the court held that the record lacked any evidence of flagrant police conduct because Christmas did not allege he was mistreated or confused, and stated he was given food and drink and permitted to use the restroom and sleep.

The appellate court affirmed the conviction on June 15, 2004. Christmas filed a petition for leave to appeal ("PLA") in the Illinois Supreme Court. The PLA was denied on November 24, 2004. On January 12, 2005, Christmas petitioned the United States Supreme Court for a writ of certiorari, which was denied on April 4, 2005. Christmas filed this petition for a writ of habeas corpus on April 6, 2006.

## III. ANALYSIS

In his habeas corpus petition, Christmas alleges two grounds on which he believes he is being held unlawfully. He claims that the Illinois appellate court violated his Fourth Amendment rights by: 1) finding that there was an intervening factor that sufficiently attenuated his statement from the illegal arrest; and 2) determining that the police conduct during his arrest was not purposeful and flagrant.

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief to a prisoner held by the State only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (2006). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1219, further limited the ability of federal courts to grant such relief to prisoners held in state custody. The AEDPA provides that an

application for such a writ "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless" the resulting decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or the decision was based on "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d) (2006); *see also Carey v. Musladin*, 127 S.Ct. 649, 652-53 (2006). The Supreme Court has stated that "[a] state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). In addition, the *Brown* Court explained that "[a] state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Id.*

Since Christmas is claiming an alleged Fourth Amendment violation, the Supreme Court has even further narrowed his right to the relief he seeks. *See Stone v. Powell*, 428 U.S. 465 (1976). The *Stone* Court stated that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494-95. The Seventh Circuit has recently and once again interpreted the *Stone* decision to have placed Fourth Amendment claims outside the scope of 28 U.S.C. § 2254. *Cabrera v. Hinsley*, 324 F.3d 527, 530 (7th Cir. 2003); *see also Mahaffey v. Schomig*, 294 F.3d 907, 918 (2002). The *Cabrera* court stated that "[t]he AEDPA's changes to § 2254(d) apply only to cases within the scope of § 2254(a) . . . and *Stone* is based on an

7

interpretation of § 2254(a) that treats inaccurate administration of the exclusionary rule as outside the scope of that statute." *Cabrera*, 324 F.3d at 530 (*citing Hampton v. Wyant*, 296 F.3d 560 (7th Cir. 2002)).

Furthermore, the Seventh Circuit defined "full and fair" opportunity to litigate as a guarantee to the right "to present one's case, but . . . not [a] guarantee [to] a correct result." *Id.* at 532.

In this case, the Illinois courts—specifically the Illinois appellate court—considered both the legality of Christmas's arrest as well as the admissibility of his resulting statements. The court's consideration provided Christmas with a full and fair consideration of his Fourth Amendment claims. Therefore, pursuant to the Supreme Court's decision in *Stone*, Christmas is not entitled to habeas corpus relief on his Fourth Amendment claims. *Stone*, 428 U.S. at 494-95. In any event, the state court's application of *Brown* is not unreasonable; that is, it is not a conclusion "lying well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

## IV. CONCLUSION

The petition for a writ of habeas corpus is denied.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: February 6, 2007

8